# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\*\*\*

MICHAEL ANTHONY NELSON,

    Petitioner,

v.

WARDEN HOWELL, et al.,

    Respondents.

Case No. 2:18-cv-00565-APG-DJA

**ORDER**

Petitioner Michael Anthony Nelson filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 6. This matter is before me for adjudication on the merits of the remaining grounds in the Petition. As discussed below, I deny the Petition.

*Background*[1]

In 2013, a jury convicted Nelson for, among other things, burglary while in possession of a firearm with the intent to commit assault or battery, and he was sentenced to 48 to 156 months in prison.[2] Exh. 118, pp. 2–4.[3] The convictions are the result of a second trial. *Id.*

---

[1] I make no credibility findings or other factual findings regarding the truth of evidence or statements of fact in the state court. I summarize them solely as background to the issues presented in this case and do not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by me. Any absence of mention of a specific piece of evidence or category of evidence does not signify that I overlooked the evidence in considering Nelson's claims.

[2] Nelson initiated this habeas proceeding while he was incarcerated. ECF No. 6. It appears he has been discharged from custody. ECF No. 34, 40 at 6.

[3] Exhibits referenced in this order are the respondents' exhibits. *See* ECF Nos. 20–25, 48.

In Ground 1 of his Petition, Nelson alleges that his appellate counsel's challenge to the sufficiency of the evidence for the burglary conviction deprived him of the effective assistance of counsel. ECF No. 6 at 3–6. In Ground 2, Nelson alleges there is insufficient evidence he had the intent to commit assault or battery required for the burglary conviction.[4] *Id.* at 7–10.

The evidence available to the State at the time of Nelson's trial tended to establish the following:

One of the victims, Martha Clark, testified she and Nelson had an on-and-off relationship for about 6 months that ended in 2011. Exh. 102, pp. 10–11. Martha said during the time they were together, Nelson "put [his] foot in [her] face," "beat [her] up," "hit [her] son in his face," and was arrested for domestic violence. *Id.* at 65–66. Martha also said Nelson previously sent her a picture of himself with a gun "to let [her] know" he had one. *Id.* at 68.

Martha testified that on February 7, 2012, she was not in good health and was discharged from the hospital. *Id.* at 29. She planned to pick up her father, Edward Clark, the following day after his own stay in the hospital. *Id.* at 13–14. According to Martha, in the early morning hours of February 8, 2012 Nelson called her and said he wanted "to come back," and wanted "something to eat" so she permitted him to visit her apartment. *Id.* at 12–14. Martha said that around 3:00 a.m. she gave Nelson money to buy food and permitted him to leave in her vehicle. *Id.* at 13, 42–43, 70–71, 74.

---

[4] I previously found Ground 2 exhausted but not necessarily procedurally defaulted as Ground 1 could potentially provide good cause to excuse the procedural default of Ground 2. I deferred ruling whether Ground 2 was procedurally defaulted until conclusion of the merits review for Ground 1. ECF No. 37 at 5. Based on the disposition for Ground 1, I decline to reach the merits for Ground 2. *See infra* p. 14.

Martha and her granddaughter, E.S.,[5] each testified Nelson later entered their apartment at 8:00 a.m. using the apartment key that was on the same ring as the car key and went into Martha's bedroom. *Id.* at 18, 83. E.S. testified Nelson asked her whether Martha had a boyfriend and she heard Martha tell Nelson to "get out" of her bedroom, but Nelson refused. *Id.* at 83–84. Martha said Nelson refused to let her take her car and insisted he come along to pick up Edward, telling her she had no choice in the matter. *Id.* at 19. Martha said she told Nelson she did not want him to go with them, but Nelson said, "come on, let's go" and "I will give you the keys." *Id.* at 19–20.

Martha and E.S. testified they left the apartment with Nelson and he locked the front door. *Id.* at 20, 73–74, 84–85. Martha testified Nelson then told her she had to take him home, but she told him, "[n]o, I am driving [and] I am going to drive my car," but Nelson refused to return her keys. *Id.* at 20. Martha and E.S. said Nelson and Martha physically wrestled over the keys, but Martha was unable to retrieve them. *Id.* at 20–21, 72, 86. Martha testified that before Nelson drove away in her car without permission, he warned her that he would kill her if she called the police. *Id.* at 34. Martha said they were locked out of their apartment and had no car, so she asked the apartment manager to change the locks, and "called a cab" so they could pick up Edward. *Id.* at 24–25, 48–49.

---

[5] Local Rule of Practice IA 6-1(a) states: "Parties must refrain from including—or must partially redact, where inclusion is necessary—[certain] personal-data identifiers from all documents filed with the court, including exhibits, whether filed electronically or in paper, unless the court orders otherwise." This includes the names of minor children. Thus, only a child's initials should be used. *Id.* The witness referred to here as "E.S." was one of the witnesses in Nelson's criminal case and she was a minor at the time the events occurred. I will identify her exclusively by her initials.

Edward testified he anticipated Martha picking him up at the hospital, but she called to tell him Nelson took her car keys.[6] Exh. 36, pp. 70–72. Edward said Nelson arrived at the hospital, but he did not want to leave with Nelson. Exh. 28, p. 38. Edward told Nelson that Martha had to check him out of the hospital because she checked him into it and asked Nelson to return Martha's car keys, but Nelson refused and left. *Id.*

According to Martha, the apartment locks were changed by the time they returned home with Edward at noon and, following lunch and a nap, she reported her car stolen. Exh. 102, pp. 25–26. Martha said she had called Nelson several times that day asking him to return her car, and when Edward got on the phone he also told Nelson to return the car, but Nelson told Edward it was not his car. *Id.* at 67; *see also* exh. 36, pp. 82–83.

Nelson returned to the apartment around 2:00 p.m. Exh. 102, pp. 72–73. E.S. testified she heard Nelson jiggle the apartment doorknob, pound on the door, and in a loud voice, say "open up the door" after he tried to enter the apartment using the old key. *Id.* at 92–93. E.S. said she "got kind of scared a little bit" and went to Martha who told her to ask Edward to open the door and to get the phone "just in case anything bad would happen." *Id.* at 93–94.

Edward testified he heard a knock at the door and when he opened it, Nelson stood there with the car keys in one hand and a gun pointed straight down "at the ground" in his other hand. Exh. 36, p. 73. E.S. testified when Edward opened the door, Nelson "said hi, I want to come in." Exh. 102, p. 94. E.S. said Edward asked Nelson to first give him the keys, but Nelson refused and pushed past Edward. *Id.* Edward said he "invited" Nelson inside so he could get the keys, but when Nelson came inside, he refused to give Edward the keys. Exh. 28, pp. 38–41. Edward

---

[6] Edward Clark was deceased at the time of trial, so Jonathan Cooper read to the jury Edward's testimony given at the preliminary hearing and the first trial. *See* Exh. 28, pp. 37–47; exh. 36, pp. 70–83; exh. 101, pp. 112–114.

said he "jumped on [Nelson]," and when Nelson resisted, they fell onto the floor. *Id*. Edward said Nelson "didn't push" him "down to the floor;" rather, Nelson lost his "balance and fell" on top of Edward because they were in a "wrestling match." *Id.* at 41, 44.

Edward testified he "reached for" the gun because he "wanted to get the gun away from [Nelson]," so he could not point it at Martha. *Id.* at 41–42. Martha testified she saw Edward holding the barrel of the gun while Nelson held the handle. Exh. 102, p. 27. Martha agreed Nelson did not point the gun at her but thought she saw him point the gun at Edward's side. *Id.* at 28, 67–68. Edward and E.S. each testified Nelson never pointed the gun at anyone. Exh. 28, p. 41; exh. 36, p. 81; exh. 102, p. 98.

Martha testified that while the men were wrestling, she jumped on Nelson, and grabbed him "around the shoulders," "to try to pull him off" Edward. Exh. 102, pp. 28–30, 63. Edward said Nelson pushed Martha backwards to shrug her off, and Martha came off when Nelson got up. Exh. 28, pp. 46–47. Martha testified after the men stood up, Nelson "slapped [her] into the door" knocking her "into the bookcase" with the "palm" of his hand. Exh. 102, pp. 31, 35. E.S. said Nelson "pushed my mom" and "slapped her" face. *Id.* at 95–96.

Edward testified he got the keys from Nelson, but Nelson had the gun, and they "kept moving until [Nelson] got to the door and went out of it." Exh 28, pp. 41, 44; exh 36, p. 76. Martha said Nelson "put the gun in the back of his pants and left out the door and said he would be back." Exh. 102, p. 31. Martha said she heard Edward tell Nelson "he wasn't going to shoot [Martha], that this wasn't going to be the day." *Id.* at 34. Martha called 911 and provided Nelson's description to the dispatcher. *Id.* at 33.

According to Officer Michael Martin of the Las Vegas Metropolitan Police Department (Metro), he and Officer Nicola Rinella located Nelson near the apartment shortly after they heard

5

the 2:00 p.m. broadcast about the 911 call. Exh. 105, pp. 16–17, 21–23, 25.  Martin said when Nelson was about six feet from the front of the patrol car, he opened the police car door, got out, and stated, "[h]ey, Michael, come here, we need to talk to you," but Nelson took off running. *Id.* at 23–25.  Martin chased Nelson into the desert and saw Nelson reach behind his back. *Id.* at 24, 28–29.  Martin said he was aware the suspect reportedly had a firearm in the back of his pants, so Martin screamed, "don't reach for your back area, I will shoot you." *Id.* 29.  Martin said Nelson looked back at him, tripped over a bush, and then Martin saw the firearm leave [Nelson's] right hand and fly into a bush. *Id.* at 29–30, 40–44.  Rinella, who was following in the police car, handcuffed Nelson while Martin guarded the gun. *Id.* at 30–31.  Metro Officer John Harrington testified he was present when Martin cleared the firearm and noticed it had "one in the chamber" ready to shoot. Exh. 101, pt. B, p. 101.  Edward, a military veteran who had handled his unit's weaponry, identified the gun the police retrieved as the one he saw in Nelson's hand at the apartment that day. Exh. 36, pp. 74–75.

  Following his convictions and sentencing, Nelson challenged the judgment of conviction on both direct appeal and state postconviction review. Exhs. 164, 212.

## *Governing Standard of Review*

*A. Antiterrorism and Effective Death Penalty Act (AEDPA)*

  The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the legal standards for my consideration of the petition:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . . [Rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a

7

"difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

   B. *Standards for Evaluating Effective Assistance of Appellate Counsel*

A petitioner asserting a claim of ineffective assistance of appellate counsel must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Under *Strickland*, a petitioner must demonstrate: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's defective performance caused actual prejudice. *Strickland*, 466 U.S. at 687.  A court starts with a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. *Id.* at 689. On the performance prong, the issue is not what counsel might have done differently but whether counsel's decisions were reasonable from his perspective at the time. *Id.* at 689–90.  On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

To prevail on an ineffective assistance of appellate counsel claim, a petitioner "must show a reasonable probability that, but for his counsel's [unreasonable performance], he would have prevailed on his appeal." *Smith*, 528 U.S. at 285–86.  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes,* 463 U.S. 745 (1983)).  The Ninth Circuit has explained that in applying *Strickland* to a claim of ineffective assistance of appellate counsel:

> [t]hese two prongs partially overlap. . . . In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks

8

>of effective appellate advocacy. . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason—because she declined to raise a weak issue.

*Miller v. Keeney,* 882 F.2d 1428, 1434 (9th Cir.1989) (citations and footnotes omitted). The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice for the same reason – the omitted issue has little or no likelihood of success on appeal. *Id.*

## *Discussion*

A. Ground 1

In Ground 1, Nelson claims his appellate counsel provided ineffective assistance in the way counsel presented argument that insufficient evidence supported the conviction for burglary while in possession of a firearm with the intent to commit an assault and/or battery.[7] ECF No. 6 at 3–6. I consider only *Strickland's* prejudice prong and hold the state supreme court's rejection of the claim constitutes an objectively reasonable application of Supreme Court authority to the facts in the state court record because there is no reasonable probability an insufficiency of evidence claim would have succeeded on appeal.

1. Additional Background

The jury convicted Nelson for burglary while in possession of a firearm by "wilfully, unlawfully, and feloniously" entering the victim's apartment "while in possession of a firearm, with intent to commit assault and/or battery." Exh 31, p. 3; exh. 108, pp. 2–3; exh. 118, pp. 3–4.

---

[7] I subdivide Nelson's Ground 1 claims as follows: Ground 1(a) concerns the claim appellate counsel was ineffective when he challenged the sufficiency of the evidence for the burglary conviction on the ground it was inconsistent with the jury's acquittal for domestic battery. Ground 1(b) concerns the claim appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting the burglary conviction.

9

The jury acquitted Nelson of battery constituting domestic violence, in which it was alleged he "wilfully, unlawfully, and feloniously" used "force or violence upon" Martha, "a person with whom he has had . . . a dating relationship" "by slapping" her "in the face with an open hand," after having committed two battery offenses within the preceding seven years. Exh. 31, p. 3; exh. 108, pp. 2–3. Nelson moved to set aside the burglary conviction on the ground the jury's acquittal for the domestic battery offense was inconsistent with a finding that sufficient evidence supported the burglary conviction, but the motion was denied. Exh. 109, pp. 3–4; exh. 174.

On direct appeal, Nelson's appellate counsel challenged the burglary conviction on the grounds "the court abused its discretion by failing to grant Nelson's motion to set aside the verdict, because the jury returned an inconsistent verdict" and "there was insufficient evidence adduced at trial to convict Nelson of burglary while in possession of a firearm." Exh. 156, pp. 26–29. The Supreme Court of Nevada rejected appellate counsel's arguments on direct appeal as follows:

> Nelson contends that there was insufficient evidence to support the conviction for burglary with the use of a deadly weapon. His sole argument in this regard is that because the jury acquitted him of battery, there was insufficient evidence that he committed burglary. This argument relies on Nelson's mistaken belief that to be convicted of burglary, he had to have committed the offense of battery when he entered the apartment. However, as the plain language of the burglary statute makes clear, Nelson needed only to have the intent to commit a felony, in this case battery and/or assault, when he entered the apartment. NRS 205.060(1). Nelson provides no argument as to how the elements of burglary were not proven or how the evidence adduced at trial was insufficient to support the conviction. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). Therefore, we decline to consider his conclusory challenge to the sufficiency of the evidence.

Exh. 164.

### 2. Applicable State Law

Burglary while in possession of firearm was defined in Nevada as follows:

> 1. A person who, by day or night, enters any house, room, apartment . . . with the intent to commit . . . assault or battery on any person or any felony . . . is guilty of burglary.
>
> . . . .
>
> 4. A person convicted of burglary who has in his or her possession or gains possession of any firearm or deadly weapon at any time during the commission of the crime, at any time before leaving the structure or upon leaving the structure, is guilty of a category B felony . . . .

NRS 205.060, as amended through 2005 Laws, c. 126, § 1, eff. May 19, 2005.

As relevant here, "[t]he offense of burglary is complete when the house or other building is entered with specific intent to commit [assault or battery on any person]." *Sheriff, Clark Cnty., Nevada v. Stevens*, 97 Nev. 316, 317–18, 630 P.2d 256, 257 (1981) (citation omitted). "[F]orcible entry is not an element of burglary." *Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1113 (2002) (citation omitted). Consent to entry is not a defense to burglary if the person acquired entry with felonious intent. *Barrett v. State*, 105 Nev. 361, 364, 775 P.2d 1276, 1277 (1989) (citation omitted). Even in public places, consent to entry is no defense to burglary against one who is shown to have made entry with the requisite felonious intent. *Id.* (citing *Thomas v. State*, 94 Nev. 605, 610, 584 P.2d 674, 677 (1978)). Moreover, "where the intent is material, the intent need not be proved by positive or direct evidence but may be inferred from the conduct of the parties and the other facts and circumstances disclosed by the evidence." *Moore v. State*, 122 Nev. 27, 36, 126 P.3d 508, 513 (2006) (citations omitted). Criminal intent

formulated after lawful entry, however, will not suffice. *State v. Adams*, 94 Nev. 503, 505, 581 P.2d 868, 869 (1978).

At the relevant time, assault was defined as "unlawfully attempting to use physical force against another person; or intentionally placing another person in reasonable apprehension of immediate bodily harm." Nev. Rev. Stat. § 200.471(1)(a), as amended through 2011 Laws, c. 273, § 51, eff. Jan. 1, 2012. Battery was defined as "any willful and unlawful use of force or violence upon the person of another." Nev. Rev. Stat. § 200.481(1)(a), as amended through 2009 Laws, c. 42, § 3, eff. May 6, 2009.

### 3. The State Court Determination

The Supreme Court of Nevada rejected Nelson's claim that appellate counsel rendered ineffective assistance when counsel challenged the sufficiency of the evidence to support the burglary conviction.

> Nelson argues that appellate counsel ineffectively litigated a sufficiency-of-the-evidence challenge to the burglary conviction. The State presented evidence that Nelson entered the apartment with a loaded firearm in his hand, after he had taken his ex-girlfriend's car without her consent early that morning following a heated argument and had returned later that morning to argue further. This evidence was sufficient for the jury to find that Nelson entered his ex-girlfriend's apartment with intent to commit an assault and/or battery. *See* NRS 205.060(1). The jury's verdict acquitting Nelson of the battery charge does not undermine the sufficiency of the evidence to support the burglary conviction. *See United States v. Powell*, 469 U.S. 57, 64-68 (1984) (explaining that inconsistent verdicts did not provide grounds to vacate conviction); *Brinkman v. State*, 95 Nev. 220, 224, 592 P.2d 163, 165 (1979) (similar). Nelson has accordingly failed to show that the sufficiency-of-the-evidence challenge had a reasonable probability of success on appeal but for counsel's purportedly deficient performance in litigating the issue. The district court therefore did not err in denying this claim without an evidentiary hearing.

ECF No. 25-31.

    *4. Ground 1(a)*

The state supreme court determined there was no reasonable probability appellate counsel would have succeeded with a challenge to the sufficiency of the evidence for the burglary conviction based on the jury's acquittal for domestic battery and alleged inconsistent verdict. Because that determination was reasonable, I deny federal habeas relief on Ground 1(a).

Even assuming without deciding that the burglary and domestic battery convictions were inconsistent, the Supreme Court has held that inconsistent verdicts are no substitute for sufficiency of the evidence analysis and an inconsistent verdict does not alone support reversal of a conviction. *Dunn v. United States*, 284 U.S. 390, 393–94 (1932). In *Dunn*, the Supreme Court held "[c]onsistency in the verdict is not necessary" and explained "[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible," however, "verdicts cannot be upset by speculation or inquiry into such matters." *Id.* at 394.

> The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Id.* at 393 (citation and internal quotation marks omitted); *see also United States v. Powell*, 469 U.S. 57, 63–69 (1984) (reaffirming *Dunn*, and holding "the best course to take is simply to insulate jury verdicts from review on this ground.").

In *Powell*, the Supreme Court noted "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts," and cautioned that review for sufficiency of the evidence "should not be confused with the problems caused by inconsistent verdicts." *Powell*, 469 U.S. at 67 (citing *Jackson,* 443 U.S. at 316) (other citations omitted).

Nelson suffered no prejudice from appellate counsel's performance because there was no reasonable probability appellate counsel's challenge to the sufficiency of the evidence for the burglary conviction, based on an inconsistent verdict claim, would have succeeded on direct appeal. The state supreme court's rejection of Nelson's claim constitutes an objectively reasonable application of *Strickland* to the facts in the record, so Nelson is entitled to no federal habeas corpus relief on Ground 1(a).

### 5. Ground 1(b)

The Supreme Court of Nevada determined there was no reasonable probability, on this record, for appellate counsel to succeed with a challenge to the sufficiency of the evidence for the conviction for burglary while in possession of a firearm with the intent to commit an assault and/or battery. Because that determination was reasonable, I deny federal habeas relief on Ground 1(b).

According to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a jury's verdict must stand if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. A federal habeas petitioner faces a "considerable hurdle" when challenging the sufficiency of evidence to support his conviction. *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004). A reviewing court, faced with a record of historical facts that support conflicting inferences, must presume the trier of fact resolved any conflicts in favor of the prosecution and defer to that resolution, even if the resolution by the state court's trier of fact of specific conflicts does not affirmatively appear in the record. *Id.* (citing *Jackson*, 443 U.S. at 326). The *Jackson* standard is applied with reference to the substantive elements of the criminal offense as defined by state law. *Id.* (citing *Jackson*, 443 U.S. at 324 n.16). When the deferential standards of AEDPA and *Jackson* are

applied together, the question for decision on federal habeas review is whether the state court's decision unreasonably applied the *Jackson* standard to the evidence at trial. *See, e.g., Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir. 2005) (citations omitted).

The state court record here reveals no reasonable probability appellate counsel would have succeeded with an insufficiency-of-evidence claim because the evidence strongly supported a finding that Nelson entered the victims' apartment while in possession of a firearm and there was ample evidence from which a rational jury could infer he harbored the intent to commit an assault and battery when he entered the apartment with the firearm.

Martha testified that on previous occasions in their relationship, Nelson beat her, hit her son in the face, and showed her a photograph of himself holding a gun. On the day of the offenses, Martha and E.S. testified Nelson physically struggled with Martha when she asked for her car keys and he refused to return them to her. Martha also testified Nelson's parting words to her, before he drove away in her car after that struggle, were that he would kill her if she called the police. E.S testified she was afraid when later that day Nelson pounded loudly on the apartment door and demanded entry. According to E.S., Nelson pushed his way into the apartment. According to Edward, Nelson entered their apartment displaying a firearm and refused to give the car keys to him. When Nelson attempted to grab the keys from Nelson's hand, Nelson did not give them up; instead, he resisted, and the two men ended up wrestling over the keys and the gun. The witnesses testified that Nelson then slapped Martha's face, knocking her into a bookcase, and exited the apartment with a promise to return. Edward testified he had tried to take the gun away from Nelson, so he would not point it at Martha and Martha testified she heard Edward tell Nelson he was not going to shoot Martha that day. A rational jury could infer the firearm was loaded at the time Nelson entered the apartment because police discovered

it was loaded when they retrieved it from Nelson soon after he left the apartment. *See supra* pp. 2–5.

On this record, a rational jury could conclude Nelson formed the specific intent to commit an assault and battery before he entered the victim's apartment with the firearm. The Supreme Court of Nevada determined a challenge to the sufficiency of the evidence for the burglary conviction had no reasonable probability of success on direct appeal. That rejection of Nelson's ineffective assistance of appellate counsel claim is an objectively reasonable application of *Strickland* to the facts in the record so Nelson is not entitled to federal habeas corpus relief on Ground 1(b).

### B.  Ground 2

In Ground 2, Nelson contends the burglary conviction is unsupported by sufficient evidence that he harbored the specific intent to commit assault or battery when he entered the apartment. ECF No. 6 at 7–10. I previously ruled Ground 2 exhausted, but procedurally defaulted. ECF No. 37 at 3–5. I deferred ruling on Ground 2 until the determination of the merits on Ground 1 because Ground 1 might conceivably establish cause and prejudice to excuse the procedural default for Ground 2. *Id.* However, failure of Nelson's appellate counsel to present a sufficiency-of-evidence argument on the specific intent element for the burglary conviction in his direct appeal could only serve as cause for Nelson's default of this claim if appellate counsel's performance was constitutionally ineffective assistance of counsel. *Coleman v. Thompson,* 501 U.S. 722, 754 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). As discussed in Ground 1, appellate counsel's challenge to the sufficiency of the evidence for the burglary conviction had no likelihood of success on appeal, counsel did not provide

constitutionally ineffective assistance of counsel, and Nelson cannot establish cause and prejudice to excuse the procedural default on Ground 2. *See supra* pp. 11–14.

For these reasons and those set forth in my prior order (ECF No. 37), Ground 2 is dismissed.

### *Conclusion*

Nelson was not denied effective assistance of appellate counsel because a challenge to the sufficiency of the evidence for the conviction for burglary while in possession of a firearm with the intent to commit an assault and/or battery had no likelihood of success on direct appeal. Given the holding for Ground 1, I need not reach any remaining issues raised by the parties for Ground 2. I find that the Supreme Court of Nevada's determination that Nelson was not denied effective assistance of appellate counsel constitutes an objectively reasonable application of *Strickland*'s prejudice prong and its rejection of the claim was neither contrary to nor an objectively unreasonable application of clearly established federal law.

I THEREFORE ORDER Ground 1 **is DENIED** with prejudice on the merits, Ground 2 is dismissed with prejudice, and the petition **(ECF No. 6) is DENIED** with prejudice.

I FURTHER ORDER that a certificate of appealability **is DENIED**. Jurists of reason would not find it debatable whether I am correct in my procedural ruling dismissing Grounds 2 and 3 as lacking merit for the reasons stated above and in my prior order (ECF No. 37). And reasonable jurists would not find my assessment of Ground 1 debatable or wrong.

I FURTHER ORDER the Clerk to enter a final judgment and close this case.

Dated: September 30, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE